UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS UNLIMITED CONTRACTING SERVICES, INC.; CHARTER OAK FIRE INSURANCE COMPANY; and ST. PAUL FIRE & MARINE INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | Case No. 4:16CV00516 AGF |
| BROADBAND INFRASTRUCTURE CONNECTION, LLC; and MID-CONTINENTAL CASUALTY COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This diversity action seeking indemnification and equitable contribution is before the Court on the motion of Plaintiff Communications Unlimited Contracting Services ("Communications Unlimited") to dismiss the counterclaim for indemnification filed by Defendant Mid-Continent Casualty Company ("Mid-Continent"). For the reasons set forth below, the Court will convert the motion to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

## BACKGROUND

In 2007, a company named Communications Unlimited entered into a Master Contractor Agreement with Charter Communications, Inc. ("Charter"), under which

Communications Unlimited agreed to install cable services for Charter customers in Missouri.  ECF No. 1-5.  In 2012, Communications Unlimited entered into a Master Service Agreement with Defendant Broadband Infrastructure Connection, LLC ("Broadband"), setting forth terms under which Broadband would perform cable installation work assigned to it by Communications Unlimited.  ECF No. 1-6.[1]  The Master Service Agreement contained an "Insurance" provision, requiring Broadband to obtain Commercial General Liability Insurance, with coverage for a minimum amount of $1 million per occurrence, as well as Umbrella Excess Insurance in the same amount.  The Master Service Agreement obligated Broadband to name Communications Unlimited as an additional insured party under Broadband's policies.  *Id*. at 21-22.  Broadband obtained such insurance, with Mid-Continent as the insurer.

The Master Service Agreement between Communications Unlimited and Broadband also contained an "Indemnification" provision pursuant to which Broadband agreed to indemnify Communications Unlimited for any claims and liabilities arising out of, as relevant here, wrongdoing on the part of any Broadband employee.  *Id*. at 28-29.

Communications Unlimited itself  was insured under a Commercial General Liability Policy issued by Plaintiff Charter Oak Fire Insurance Company ("Charter Oak"), and an Umbrella Excess Liability Policy issued by Plaintiff St. Paul Fire &

---

[1]  The Master Contractor Agreement was between Charter and a company named "Communications Unlimited, Inc."  The Master Service Agreement was between Broadband and a company named "CU Employment, Inc."  For purposes of the motion before the Court, the Court will treat the presumably related companies as "Communications Unlimited."

2

Marine Insurance Company ("St. Paul").

On September 23, 2014, Jane Doe filed an action in Missouri state court for damages against Charter; Broadband; Communications Unlimited; and James Helderle, a cable technician. See ECF No. 39-2 at 21. Doe alleged in her first amended petition that the three corporate defendants were joint employers of Helderle, in that they each had the right to control hiring, supervising, and firing him. ECF No. 1-7. Doe alleged that Helderle came into contact with her "through his employment and/or agency and/or affiliation with" the three corporate defendants. She alleged that he entered her apartment on December 2, 2012, to perform technical cable services, and acted inappropriately. Helderle was fired on December 4, 2012, based on Doe reporting his inappropriate behavior, and was told the reason for his termination. The next night he forced his way into Doe's apartment and sexually assaulted her. Doe asserted claims of negligent hiring, negligent supervision, and negligent failure to warn against each of the three corporate defendants, and a battery claim against Helderle. *Id*.

Plaintiffs in the present case made a demand upon Mid-Continent to defend and indemnify Communications Unlimited in the Doe action, but Mid-Continent denied the request. Communications Unlimited alleges that on January 20, 2016, the three Plaintiffs in the present case paid a confidential sum in settlement of Doe's claims against Communications Unlimited. Communications Unlimited now seeks indemnification from Broadband (Count I), under the Master Service Agreement, for the full amount of the Doe settlement plus expenses and costs incurred in that action; and for the same

amount from Mid-Continent (Count II) for breach of the Broadband insurance policies naming Communications Unlimited as an additional insured. Charter Oak and St. Paul seek equitable contribution against Mid-Continent (Count III).

Mid-Continent filed a Counterclaim against Communications Unlimited in which it states that (on or about January 3, 2017) Mid-Continent settled Doe's claims against Broadband, its insured, for a confidential amount. EFC. No. 36. Mid-Continent further states that Broadband assigned Broadband's rights against Communications Unlimited to Mid-Continent, with respect to the amount paid to settle Doe's claims against Broadband. Mid-Continent alleges that Communications Unlimited was the corporate party that was solely responsible for, and at fault in, hiring and supervising Helderle, in that Communications Unlimited "completely dominated all operations of Broadband . . . includ[ing] complete control regarding hiring, training, supervision, disciple and firing of employees." More specifically, Mid-Continent alleges that "[i]t was employees or officers of [Communications Unlimited] who hired Helderle and were responsible for his training, job assignment and supervision." *Id*. at 5-6. Mid-Continent claims that, as such, Communications Unlimited is liable to Mid-Continent for contribution or indemnity for the amount Mid-Continent paid to settle Doe's claims against Broadband.

## **ARGUMENTS OF THE PARTIES**

In support of its motion to dismiss Mid-Continent's counterclaim, Communications Unlimited argues that Mid-Continent's claims for contribution or noncontractual indemnity are barred pursuant to Mo. Rev. Stat. § 537.060, by virtue of

4

Communications Unlimited's settlement of Doe's claim against it. Section 537.060 provides as follows:

> When an agreement by release . . . is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

Communications Unlimited submits with its motion to dismiss, a copy of the January 28, 2016 voluntary dismissal with prejudice of Doe's claims against Charter and Communications Unlimited in the state case. ECF No. 39-1. Communications Unlimited also submits a copy of the docket sheet in the Doe case, that shows that on December 22, 2016, Doe filed a notice of her dismissal with prejudice of the case against Broadband, which was granted by the court on January 3, 2017. ECF No. 39-2. According to the docket sheet, the order of dismissal stated that the case "remained set for 1-6-17 to show cause why the cause of action against James Helderle should not be dismissed for failure to prosecute." *Id*. The next day Doe dismissed her claim against Helderle. *Id*.

Mid-Continent responds that the motion to dismiss its counterclaim should be denied on both procedural and substantive grounds. Procedurally, Mid-Continent argues

5

that the motion must be converted to one for summary judgment under Federal Rule of Civil Procedure 12(d) because the motion relies on the settlement agreement between Doe and Charter and Communications Unlimited, and whether it was entered into in good faith, matters outside the pleadings. Relatedly, Mid-Continent argues that § 537.060 is an affirmative defense on which Communications Unlimited has the burden of proving the existence of a settlement agreement, and its good faith, a burden Communications Unlimited has not met.

Substantively, Mid-Continent argues that § 537.060 is not applicable here because that statutory provision addresses liability among two or more parties whose concurrent or successive actions proximately cause a single injury, whereas Mid-Continent's counterclaim is based on an allegation that Communications Unlimited – through its own negligence and legal domination of Broadband (Mid-Continent's insured) – is solely responsible for the injury at issue. Mid-Continent requests that at the least, the counterclaim should not be dismissed until discovery can be completed into this allegation. Mid-Continent further states that it "anticipates that this discovery may reveal contracts demanding indemnity and/or facts establishing vicarious liability, which would preclude [Communications Unlimited's] claimed affirmative defense under Section 537.060 and will further establish [Communications Unlimited's] liability to Mid-Continent, regardless of any settlements of Jane Doe's underlying claims." ECF No. 40 at 7.

In reply, Communications Unlimited submits a copy of a protective order entered

by the state court in the Doe case on June 22, 2016, protecting the confidentiality of "the settlement releases" between Doe and Charter and Communications Unlimited, pursuant to which a copy of the settlement agreement was produced to Broadband. Communications Unlimited maintains that the Court can take judicial notice of the state court documents Communications Unlimited has submitted, and that there is sufficient support in the record to grant Communications Unlimited's motion to dismiss. Communications Unlimited offers to produce the settlement agreement between it and Doe to the Court for *in camera* review, should the Court so request. Communications Unlimited asserts that the remaining discovery identified by Mid-Continent has no bearing on Communication Unlimited's discharge from liability for contribution of noncontractual indemnity.

## **DISCUSSION**

The parties are in agreement that Missouri substantive law governs this diversity action. This Court must predict how the Missouri Supreme Court would rule on substantive issues, and follow decisions of the state's intermediate courts when they are the best evidence of state law. *See Walker v. Hartford Life & Accident Ins. Co.*, 831 F.3d 968, 973 (8th Cir. 2016) (citation omitted). The Missouri Supreme Court has explained that the policy behind the relevant portion of § 537.060 is to encourage settlements by allowing an alleged a tort-feasor to "buy peace by good faith settlement with the claimant," and that the "advantages of promoting settlement outweigh the possible disadvantage to those who settle late, or who do not settle at all and stand trial." *Lowe v.*

*Norfolk & W. Ry. Co.*, 753 S.W.2d 891, 894-95 (Mo. 1988). The statute reaffirmed the common law rule that a defendant in a tort action who reaches a good-faith settlement with the plaintiff is protected from contribution and indemnity claims asserted by other defendants. *Id*. The term "good faith" as used in § 537.060 refers to "the good faith in which the release is given by the claimant," and does not contemplate "delving into the intent of a joint tort-feasor who settles, even though the intent may be to avoid contribution." *State ex rel. Sharma v. Meyers*, 803 S.W.2d 65, 67-68 (Mo. Ct. App. 1990).

Communications Unlimited's motion to dismiss could perhaps be granted based on the record before the Court, including the state court documents Communications Unlimited submitted. The Court takes judicial notice of these state court documents. *See, e.g., Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). Communications Unlimited has offered strong argument that suggest that the Missouri Supreme Court would hold that Mid-Continent's counterclaim for contribution or indemnity is barred by § 537.060. And Mid-Continent's argument that § 537.060 is not applicable here because Mid-Continent's claim for indemnification is based on Mid-Continent's allegation that Communications Unlimited was totally at fault appears to undermine the purpose of the statute to encourage settlements.

However, in an abundance of caution, the Court will convert the motion to one for summary judgment, and, pursuant to Rule 12(d) give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

12(d). Although Mid-Continent argues that discovery may reveal contracts of indemnity or facts establishing vicarious liability, Mid-Continent has had ample time for discovery on these issues. The Case Management Order was entered on January 24, 2017, and the motion to dismiss now under consideration has been pending for almost three months.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion (ECF 38) of Plaintiff Communications Unlimited to dismiss Mid-Continent's counterclaim for indemnification is converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

**IT IS FURTHER ORDERED** that Communications Unlimited shall have up to and including **June 10, 2017**, to supplement its memorandum in support of the motion at issue and to submit any additional pertinent materials. Mid-Continent shall have 28 days after the filing of the supplemental memorandum to respond to Communication Unlimited's motion for summary judgment on Mid-Continent's counterclaim for indemnification. Communications Unlimited shall have 14 days thereafter to file a reply.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of May, 2017.