UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS UNLIMITED CONTRACTING SERVICES, INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:16CV00516 AGF |
| BROADBAND INFRASTRUCTURE CONNECTION, LLC; and MID-CONTINENT CASUALTY COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |
| _____ | | |
| MID-CONTINENT CASUALTY COMPANY, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| vs. | ) ) | |
| COMMUNICATIONS UNLIMITED CONTRACTING SERVICES, INC., | ) ) ) | |
| Counterclaim Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This diversity action seeking indemnification and equitable contribution is before the Court on the motion (ECF No. 48) of Plaintiff Communications Unlimited Contracting Services ("Communications Unlimited") for partial summary judgment on

Defendant Mid-Continent Casualty Company's ("Mid-Continent") counterclaim for non-contractual indemnity or contribution from Communications Unlimited for sums Mid-Continent paid to settle claims made against its insured, Defendant Broadband Infrastructure Connection, LLC ("Broadband"), in an earlier action. For the reasons set forth below, the motion will be granted.

## BACKGROUND

The facts relevant to the motion before the Court are as recited in the Court's Memorandum and Order dated May 10, 2017, converting Communications Unlimited's motion to dismiss Mid-Continent's counterclaim to a motion for summary judgment:

> In 2007, a company named Communications Unlimited entered into a Master Contractor Agreement with Charter Communications, Inc. ("Charter"), under which Communications Unlimited agreed to install cable services for Charter customers in Missouri. In 2012, Communications Unlimited entered into a Master Service Agreement with [Broadband], setting forth terms under which Broadband would perform cable installation work assigned to it by Communications Unlimited. The Master Service Agreement contained an "Insurance" provision, requiring Broadband to obtain Commercial General Liability Insurance, with coverage for a minimum amount of $1 million per occurrence, as well as Umbrella Excess Insurance in the same amount. The Master Service Agreement obligated Broadband to name Communications Unlimited as an additional insured party under Broadband's policies. Broadband obtained such insurance, with Mid-Continent as the insurer.
>
> The Master Service Agreement between Communications Unlimited and Broadband also contained an "Indemnification" provision pursuant to which Broadband agreed to indemnify Communications Unlimited for any claims and liabilities arising out of, as relevant here, wrongdoing on the part of any Broadband employee.
>
> Communications Unlimited itself was insured under a Commercial General Liability Policy issued by Plaintiff Charter Oak Fire Insurance

Company ("Charter Oak"), and an Umbrella Excess Liability Policy issued by Plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul").

On September 23, 2014, Jane Doe filed an action in Missouri state court for damages against Charter; Broadband; Communications Unlimited; and James Helderle, a cable technician. Doe alleged in her first amended petition that the three corporate defendants were joint employers of Helderle, in that they each had the right to control hiring, supervising, and firing him. Doe alleged that Helderle came into contact with her "through his employment and/or agency and/or affiliation with" the three corporate defendants. She alleged that he entered her apartment on December 2, 2012, to perform technical cable services, and acted inappropriately. Helderle was fired on December 4, 2012, based on Doe reporting his inappropriate behavior, and was told the reason for his termination. The next night he forced his way into Doe's apartment and sexually assaulted her. Doe asserted claims of negligent hiring, negligent supervision, and negligent failure to warn against each of the three corporate defendants, and a battery claim against Helderle.

Plaintiffs in the present case made a demand upon Mid-Continent to defend and indemnify Communications Unlimited in the Doe action, but Mid-Continent denied the request. Communications Unlimited alleges that on January 20, 2016, the three Plaintiffs in the present case paid a confidential sum in settlement of Doe's claims against Communications Unlimited. Communications Unlimited now seeks indemnification from Broadband (Count I), under the Master Service Agreement, for the full amount of the Doe settlement plus expenses and costs incurred in that action; and for the same amount from Mid-Continent (Count II) for breach of the Broadband insurance policies naming Communications Unlimited as an additional insured. Charter Oak and St. Paul seek equitable contribution against Mid-Continent (Count III).

Mid-Continent filed a counterclaim against Communications Unlimited in which it stated that (on or about January 3, 2017) Mid-Continent settled Doe's claims against Broadband, its insured, for a confidential amount. Mid-Continent further stated that Broadband assigned Broadband's rights against Communications Unlimited to Mid-Continent, with respect to the amount paid to settle Doe's claims against Broadband. Mid-Continent alleged that Communications Unlimited was the corporate party that was solely responsible for, and at fault in, hiring and supervising Helderle, in that Communications Unlimited "completely

3

dominated all operations of Broadband . . . includ[ing] complete control regarding hiring, training, supervision, disciple and firing of employees." More specifically, Mid-Continent alleged that "[i]t was employees or officers of [Communications Unlimited] who hired Helderle and were responsible for his training, job assignment and supervision." Mid-Continent claimed that, as such, Communications Unlimited was liable to Mid-Continent for contribution or indemnity for the amount Mid-Continent paid to settle Doe's claims against Broadband.

ECF No. 44.

On January 28, 2016, Doe voluntarily dismissed with prejudice her state court claims against Charter and Communications Unlimited. On December 22, 2016, Doe filed a notice of her dismissal with prejudice of the case against Broadband, which was granted by the court on January 3, 2017. On January 4, 2017, Doe dismissed her claim against Helderle.

In support of its motion to dismiss, Communications Unlimited argued that Mid-Continent's counterclaims for contribution or non-contractual indemnity were barred pursuant to Mo. Rev. Stat. § 537.060, by virtue of Communications Unlimited's settlement of Doe's claim against it. Section 537.060 provides as follows:

> When an agreement by release . . . is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

4

Mid-Continent argued that § 537.060 was not applicable here because that statutory provision addresses liability among two or more parties whose concurrent or successive actions proximately cause a single injury, whereas Mid-Continent's counterclaim is based on an allegation that Communications Unlimited – through its own negligence and legal domination of Broadband (Mid-Continent's insured) – was solely responsible for the injury at issue. Mid-Continent requested that the counterclaim should not be dismissed until discovery can be completed into this allegation, and that it anticipated that "this discovery may reveal contracts demanding indemnity and/or facts establishing vicarious liability," which establish Communications Unlimited's liability to Mid-Continent, regardless of the settlement of Jane Doe's underlying claims.

In considering the motion to dismiss the counterclaim the Court held as follows:

> The Missouri Supreme Court has explained that the policy behind §537.060 was to encourage settlements by allowing an alleged a tort-feasor to buy peace by good faith settlement with the claimant, and that the advantages of promoting settlement outweigh the possible disadvantage to those who settle late, or who do not settle at all and stand trial. The statute reaffirmed the common law rule that a defendant in a tort action who reaches a good-faith settlement with the plaintiff is protected from contribution and indemnity claims asserted by other defendants.

> The term "good faith" as used in § 537.060 refers to the good faith in which the release is given by the claimant, and does not contemplate delving into the intent of a joint tort-feasor who settles, even though the intent may be to avoid contribution.

> The Court believes that the Missouri Supreme Court would hold that Mid-Continent's counterclaim for contribution or indemnity is barred by

> § 537.060. Mid-Continent does not suggest that here, Doe entered into the settlement agreement with Communications Unlimited involuntarily, and the state court record shows that she had counsel. The actual terms of the settlement agreement are not relevant.
>
> Mid-Continent's argument that § 537.060 is not applicable here because Mid-Continent's claim for indemnification is based on Mid-Continent's allegation that Communications Unlimited was totally at fault is unavailing. Such a rule would undermine the purpose of the very statute to encourage settlements. The Court notes that Mid-Continent has acquired only the rights that its insured, Broadband, an alleged tort-feasor, possessed.
>
> Mid-Continent points to no contractual right to indemnity from Communications Unlimited, nor to a right to indemnity from Communications Unlimited that comes by reason of vicarious liability.

ECF No. 44 (all citations omitted).

The Court concluded that Communications Unlimited had offered strong argument that suggested that the Missouri Supreme Court would hold that Mid-Continent's counterclaim for contribution or indemnity was barred by § 537.060, and that Mid-Continent's argument that § 537.060 is not applicable because Mid-Continent's claim for indemnification is based on Mid-Continent's allegation that Communications Unlimited was totally at fault appeared to undermine the purpose of the statute to encourage settlements. However, noting that Mid-Continent argued that discovery might reveal contracts of indemnity or facts establishing vicarious liability, the Court, "in an abundance of caution," converted the motion to one for summary judgment, and, pursuant to Federal Rule of Civil Procedure 12(d), gave the parties time to supplement their arguments and to submit any additional pertinent materials.

On June 12, 2017, Communications Unlimited filed the present motion, again arguing that Mid-Continent's counterclaims for contribution or non-contractual indemnity were barred pursuant to Mo. Rev. Stat. § 537.060, by virtue of Communications Unlimited's settlement of Doe's claim against it. And Mid-Continent again argues that Mid-Continent's right to indemnity arises, "at least in part," from Communication's Unlimited's total domination and control of Mid-Continent's insured, Broadband. Mid-Continet argues that, "at a minimum," this is a subject of genuine fact dispute that precludes summary judgment. Mid-Continent claims the existence of a principal-agent relationship between Communications Unlimited (as principal) and Broadband (as agent), giving rise to the vicarious liability exception contained in § 537.060.

Mid-Continent also contends that its claim for indemnity against Communications Unlimited is contractual in nature because (1) the assignment of claims from Broadband to Mid-Continent is a contract; and (2) the Master Service Agreement contains an undefined implied obligation requiring Communications Unlimited to indemnify Broadband. In support of its total-domination assertion, Mid-Continent submits the deposition of Jeff Heger, Broadband's Vice President of Operations, who testified about the working relationship between Communications Unlimited and Broadband. ECF No. 59-1.

In reply, Communications Unlimited presents evidence that disputes Mid-Continent's complete-domination evidence, but more importantly, Communications

Unlimited again argues that the degree of control exercised by Communications Unlimited over Broadband is irrelevant to the application of § 537.060. Communications Unlimited posits, as it did in support of its motion to dismiss the counterclaim, that should the Court accept Mid-Continent's argument, any non-settling defendant would be able to maintain causes of action for contribution or non-contractual indemnity against a settling defendant simply by pleading that the settling party was entirely at fault for the plaintiff's injuries. Communications unlimited also again notes that in the underlying state court action, Jane Doe's claims against Broadband were premised on Broadband's independent wrongful acts and did not allege that Broadband was vicariously liable for the acts of Communications Unlimited. Thus, the vicarious liability exception in § 537.060 does not come into play.

Lastly, Communications Unlimited, recognizing that in some instances, indemnity may arise from a contractual relationship even if the parties did not expressly include an indemnity clause in the contract, argues that here a right of indemnity in favor of Broadband cannot be implied from the Master Service Agreement. Communications Unlimited points to the following provision in that agreement:

> **Limitation of Liability.** NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT TO THE CONTRARY, UNDER NO CIRCUMSTANCE OR LEGAL THEORY (TORT, CONTRACT OR OTHERWISE), SHALL [COMMUNICATIONS UNLIMITED] BE LIABLE TO [BROADBAND] FOR ANY LOST PROFITS, LOSS OF USE, LOSS OF OPPORTUNITY OR ANY OTHER SPECIAL, PUNITIVE, INDIRECT OR CONSEQUENTIAL DAMAGES . . . SUFFERED BY [BROADBAND] ARISING IN CONNECTION WITH THE WORK, ANY STATEMENT OF WORK, THIS AGREEMENT OR THE DOCUMENTS.

ECF No. 1-6 ¶ 23. Communications Unlimited argues that "the Master Service Agreement contains substantial language providing for Communications Unlimited's indemnification, no language providing for Broadband's indemnification, and a limitation of liability provision preventing Broadband from seeking any consequential damages from Communications Unlimited. It cannot reasonably be argued that the parties intended for Communications Unlimited to indemnify Broadband under these circumstances." ECF No. 64 at 15.

## **DISCUSSION**

"Summary judgment is appropriate only when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Olga Despotis Tr. v. Cincinnati Ins. Co*., 867 F.3d 1054, 1059 (8th Cir. 2017). Mid-Continent has shown that there are issues of fact as to the degree of domination that Communications Unlimited exerted over Broadband. But, for the reasons stated in the Court's May 10, 2017 Order, the degree of domination is not a material fact. Nor has Mid-Continent presented any relevant evidence of a contractual right to indemnity.

Mid-Continent has not presented any cases or argument that cause the Court to reconsider its prior conclusion on this legal issue of the applicability of § 537.060 to bar Mid-Continent's counterclaim for indemnity. In sum, Mid-Continent's arguments that it has a claim for indemnity "which comes about by reason of contract, or by reason of vicarious liability" are without merit for the reasons previously stated by the Court and

9

advanced by Communications Unlimited in support of the motion for summary judgment. Communications Unlimited is entitled to summary judgment on Mid-Continent's counterclaim.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Plaintiff Communications Unlimited Contracting Services for partial summary judgment on Defendant Mid-Continent Casualty Company's Counterclaim for indemnity or contribution is **GRANTED**. (EFC No. 48.)

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2018.