UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS UNLIMITED, CONTRACTING SERVICES, INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:16-CV-00516-AGF |
| BROADBAND INFRASTRUCTURE CONNECTION, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment (ECF Nos. 102, 104, 106, 110). Plaintiffs are Communications Unlimited Contracting Services, Inc. and its insurers, Charter Oak Fire Insurance Company and St. Paul Fire & Marine Insurance Company (a/k/a Travelers[1]). Defendants are Broadband Infrastructure Connection, LLC and its insurer, Mid-Continent Casualty Company. For the reasons set forth below, the parties' motions will be denied.

### BACKGROUND

**Communications Unlimited Entities**

Plaintiff Communications Unlimited Contracting Services, Inc. (CU Contracting) and its two affiliate companies, CU Employment, Inc. and CU Equipment, Inc., are corporations wholly-owned by Mr. Martin Rocha. They operate together under the trade

---

[1] Travelers is an insurance group that includes Charter Oak and St. Paul. They refer to themselves jointly as Travelers.

name Communications Unlimited, Inc. (CUI). CUI itself is not an incorporated entity but rather a "d/b/a" for the three CU companies. CUI is in the business of performing field labor services for cable providers. CU Contracting negotiates and holds CUI's business contracts. CU Equipment owns CUI's vehicles, tools, and equipment. CU Employment employs personnel performing work for CUI clients. The three entities prepare joint financial statements, share joint bank accounts, and use the same CUI logo. The Court will refer to this Plaintiff by its trade name CUI as it is commonly known,[2] except where the distinction between CU entities is relevant.

**The Parties' Agreement**

In early 2012, CUI engaged Broadband to provide personnel and equipment to support CUI's operations. The parties shared a warehouse leased and managed by CUI. The contractual relationship between CUI and Broadband is governed by a Master Service Agreement (MSA). CU Employment is the CUI signatory entity designated as "the Company." Broadband is designated "Contractor."

Various provisions of the MSA contemplate that Broadband supplies and controls personnel performing the work. Other provisions specify that the Company (i.e., CU Employment) conducts background checks and drug tests on all personnel and retains ultimate authority to limit or terminate any technician from service. Broadband personnel are required to wear identification badges "issued by the Company." All work vehicles must display the Company's client's logo, and the Company's name must also be displayed as an authorized contractor of the client. All personnel must wear uniforms

---

[2] Throughout the record, this party is consistently referred to as CUI.

bearing the client's logo.  Broadband is prohibited from displaying its own name when performing work for Company clients.

Additionally, Broadband must carry commercial general liability insurance and umbrella excess liability coverage of at least $1 million per occurrence, naming as additional insureds "the Company and its agents, subsidiaries, parents, affiliates, directors, officers and their employees."  Broadband obtained such insurance from Mid-Continent.  Among the various indemnification provisions, Broadband is required to indemnify the Company and its agents for any losses arising out of or in connection with Broadband's performance under the agreement or any wrongdoing by Broadband's employee.  Finally, neither party is responsible for any act or omission of the other or the other's employees.

**Helderle's Employment**

It is undisputed that CUI and Broadband conducted their operations from the same facility, leased and managed by CUI.  In November 2011, Broadband hired Robert Sebring as facility manager, which, among other responsibilities, entailed interviewing and hiring Broadband employees.  In the spring of 2012, Sebring was transferred to CUI (on the payroll of CU Employment) as an asset manager, in which role he continued to interview and hire employees for Broadband.  In early October 2012, Sebring interviewed James Helderle for a position as a cable technician.

The record contains several personnel documents related to Helderle's hiring.  An employee handbook acknowledgment is signed by Helderle and identifies him as a Broadband employee.  An arbitration agreement signed by Helderle identifies Broadband

as the employer but elsewhere refers to CUI, specifically "Communications Unlimited, Inc." A third-party user privacy agreement is signed by Helderle on Broadband letterhead. A vehicle issue / driving policy bears Helderle's name on Broadband letterhead. Consent forms signed by Helderle for the background check and drug test do not identify either party but refer to the "Company" with which the applicant seeks employment. A CUI administrator forwarded these documents, along with Helderle's W-4 information, to Broadband's accountant, Joshua Harman. CUI conducted a background check through CrimShield; the resulting report was issued to "Communications Unlimited, Inc." CUI conducted a drug test through a third party provider; the resulting report was issued to "Communications Unlimited." Helderle passed the background check and drug test and was hired in late November. Helderle was issued a work badge and technician number identifying him as a representative of CUI. Helderle's first timesheet bears the CUI logo.

**The Underlying Claim**

One of CUI's clients is Charter Communications, Inc. During Helderle's second week as a trainee, Helderle accompanied CUI technician Jeff Woerther on a service call to the residence of Charter customer Jane Doe. Helderle asked Doe personal questions during the visit and shortly thereafter contacted her via text message to her personal cell phone to ask her out for drinks. In the 24 hours that followed, Doe complained to Charter, Charter contacted CUI, and CUI manager Randy Ayers called Helderle into his office and terminated him. That night, Helderle returned to Doe's home where he violently and sexually assaulted her.

Doe filed a lawsuit in state court against Charter, CU Contracting, Broadband, and Helderle, alleging that the corporate defendants were Helderle's joint employers and asserting claims of negligent hiring, negligent supervision, and negligent failure to warn. Plaintiffs tendered the claim to Defendants for defense and indemnification. Mid-Continent rejected the demand. Doe reached a confidential settlement with Charter, CU Contracting, and Travelers, who funded most of the settlement payment and defense costs. Broadband settled with Doe separately. Plaintiffs then filed this diversity action seeking indemnification and equitable contribution from Defendants.

## ARGUMENTS OF THE PARTIES

In Plaintiffs' complaint, CU Contracting seeks full indemnification from Broadband under the MSA (count I) and from Mid-Continent under Broadband's insurance policies naming CUI as an additional insured (count II). Plaintiff Travelers seeks equitable contribution from Mid-Continent for the full settlement amount and related costs pursuant to those same policies (count III).

Plaintiff CU Contracting asserts that it is entitled to summary judgment because: (1) under the MSA, Broadband is obligated to indemnify CU Employment for liability arising out of Broadband's performance and the actions of Broadband employees; (2) CUI is a joint venture, so CU Contracting is an agent of CU Employment for purposes of the MSA indemnification clause; and (3) Helderle was a Broadband employee, and his assault of Doe arose out of his employment and Broadband's performance of the MSA.

Defendant Broadband contends that it is entitled to summary judgment because: (1) at the time of the attack, Helderle was unemployed and thus unaffiliated with either

5

party; (2) Doe's claim did not arise in connection with Broadband's performance under the MSA; (3) Doe's claim arose from CUI's own negligence in hiring and firing Helderle; and (4) even assuming that Helderle was a Broadband employee and Doe's claim arose from Broadband's performance, CU Contracting was not a party to the MSA and thus cannot invoke its indemnification clause.

In addition to the foregoing, the parties' respective insurers dispute whether Doe's claim and CU Contracting's settlement are covered under Broadband's general liability insurance policy with Mid-Continent. Specifically, they dispute whether the MSA is an "insured contract," whether CU Contracting is a "named insured," whether Doe's claim arose from Broadband's "ongoing operations" and, if so, whether Mid-Continent's coverage is primary in relation to Travelers. The Court does not reach these issues of policy construction because, as discussed below, determinative predicate facts are in dispute.

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In other words, summary judgment is appropriate when the unresolved issues are primarily legal rather than factual. *U.S. Fid. & Guar. Co. v. Hous. Auth. of the City of Poplar Bluff, Mo.*, 114 F.3d 693, 695 (8th Cir. 1997).

In ruling on a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party and must give that party the benefit of all

reasonable inferences drawn from the record. *Combs v. The Cordish Companies, Inc.*, 862 F.3d 671, 680 (8th Cir. 2017). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* The non-moving party may not rely on allegations or denials but must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor on more than mere speculation or conjecture. *Ball v. City of Lincoln, Nebraska*, 870 F.3d 722, 727 (8th Cir. 2017). Even if some factual dispute exists, if the evidence, taken as a whole, is so one-sided that a fair-minded trier of fact could not find for the non-moving party, then there is no genuine issue for trial, and the movant is entitled to summary judgment. *Id.*

**Facts Determinative of Counts I & II**

Centrally, Plaintiffs claim that the MSA requires Broadband to indemnify CU Contracting for the Doe settlement and related costs. Broadband responds that CU Contracting was not a party to the MSA and, even if it were, the Doe incident falls entirely outside the scope of the MSA, so the indemnification clause is inapplicable. The parties agree that this aspect of their dispute is governed by Alabama law pursuant to the MSA choice-of-law clause. The task of a federal court sitting in diversity is to attempt to predict how the forum state's highest court would resolve the issues. *Allstate Ins. Co. v. Blount,* 491 F.3d 903, 908 (8th Cir.2007).

In order for Plaintiffs to be entitled to summary judgment, they must establish as a matter of law beyond factual dispute that: (1) CU Contracting and CU Employment are part of a joint venture; (2) Helderle was a Broadband employee; (3) as to count I, Doe's

7

claim falls within Broadband's indemnification obligations under the MSA; and (4) as to count II, Doe's claim also falls within the scope of coverage of Broadband's liability insurance policy with Mid-Continent.

Conversely, in order for Broadband to be entitled to summary judgment, it must establish as a matter of law beyond factual dispute that: (1) it did not intend to contract with CU Contracting but only CU Employment; (2) Helderle was a CUI employee or his employment is immaterial; (3) as to count I, regardless of Helderle's employment, Doe's claim falls outside its indemnification obligations under the MSA; and (4) as to count II, Doe's claim is not covered under Broadband's insurance policy with Mid-Continent.

**The MSA applies to CU Contracting**.

As a threshold matter, Defendants dispute that CU Contracting can invoke the MSA at all, given that the CUI signatory to the MSA was CU Employment. Under the MSA, Broadband's indemnification obligation is fairly broad and includes CU Employment's agents. Plaintiffs claim that CU Contracting and CU Employment are part of a joint venture, so CU Contracting is an agent of CU Employment and thus covered by the indemnification clause of the MSA. Plaintiffs further assert that the parties clearly intended for the MSA to govern the relationship between Broadband and CUI as a whole, not solely CU Employment. In response, Defendants argue that the facts do not establish the existence of a joint venture among the CUI entities. The summary judgment record supports Plaintiffs' position and leaves no genuine issue of fact in this regard.

Under Alabama law, "the elements of a joint venture have been held to be: a contribution by the parties of money, property, effort, knowledge, skill, or other assets to

8

a common undertaking; a joint property interest in the subject matter of the venture and a right to mutual control or management of the enterprise; expectation of profits; a right to participate in the profits; and usually, a limitation of the objective to a single undertaking or ad hoc enterprise." *McLemore v. Hyundai Motor Mfg. Alabama, LLC*, 7 So.3d 318, 331 (Ala. 2008). "While every element is not necessarily present in every case, it is generally agreed that, in order to constitute a joint venture, there must be a community of interest and a right to joint control." *Id*. Whether a joint venture exists is normally a jury question unless the trial court can say that the parties were or were not engaged in a joint venture as a matter of law. *Id*. Vis-à-vis third persons, the legal, rather than actual, intent of the parties controls. *Id*.

Mindful of these high standards, the Court nonetheless finds that CUI constitutes a joint venture as a matter of law. The three CUI entities shared a common owner, officers, management, skill and effort, premises, trade name, bank accounts, insurance policies, and centrally a single objective to serve CUI clients such as Charter. The summary judgment record demonstrates that they are treated as the same entity for financial and accounting purposes; their legal and operational functions are wholly interdependent and seamless. Moreover, the MSA itself reflects a mutual legal intent that necessarily implicates the joint venture because, inversely, to apply the MSA only to CU Employment in isolation renders the document completely nonsensical. The "Company's Clients" are CUI clients such as Charter; CU Employment has no clients of its own. Helderle's background check, "performed by the Company" pursuant to the MSA, was obtained by CUI, not CU Employment. Identification badges "issued by the Company"

display the CUI trade name, and the "Company name" displayed on service vehicles is that of CUI. CU Employment has no separate logo. Confirming how Broadband complied with its identification obligations in practice, Broadband's vice-president of operations, Jeff Heger, stated, "CUI email, CUI badge, CUI shirts, CUI on my trucks, so, wherever we would go, it would say 'CUI doing business for Charter.'"

Though Broadband now claims that it only intended to contract with and indemnify solely CU Employment, the record demonstrates that Broadband was unaware of CUI's corporate structure and viewed it as a single business. Mr. Heger, who signed the MSA on Broadband's behalf, confirmed that the MSA "was to do work with CUI, not a specific sub-entity …" He explained, "I just looked at it at [sic] CUI, and they were all CUI, so ... ." This perception is all the more compelling given that Broadband and CUI shared commercial space and administrative functions.

Further, and perhaps most significantly, the certificate of insurance evidencing Broadband's purchase of general and excess liability coverage in compliance with the MSA was issued to "Communications Unlimited, Inc.," clearly demonstrating the parties' intent to protect the entirety of the CUI enterprise from losses assumed by Broadband under the MSA. In sum, given the parties' business operations as contemplated in the MSA and consistently depicted in the entire record, Broadband's suggestion that CU Contracting is a "stranger to the contract" is illogical and unpersuasive.

Broadband's remaining arguments against the existence of a CUI joint venture are without merit. First, Broadband asserts that "Inc." refers only to corporations, so CUI is a corporation and not a joint venture. This is imprecise. While Broadband is correct that,

10

under Alabama law, a corporation must include in its name the word "corporation" or "incorporated" or an abbreviation thereof (Ala. Code §10A-1-5.04), it does not follow that a trade name containing "Inc." transforms any enterprise into a corporation. Next, Broadband cites *In re Silicone Gel Breast Implants Prod Liability Litigation*, 887 F. Supp. 1455 (N.D. Ala. 1995), for the principle that a joint venture and a corporation are mutually exclusive forms of business. While this is true, in the *Silicone Gel* case, the entity in question was found not to be a joint venture because it was an actual corporation. Here, it is undisputed that CUI is not a corporation. Broadband is also correct that the existence of an express or implied contract of joint venture informs the analysis of intent, particularly as between disputing joint venturers. *See, e.g., Charles J. Arndt, Inc. v. City of Birmingham*, 547 So.2d 397, 400 (Ala. 1989). There can be no dispute that the CUI entities, by their common officers, had an implied contract to operate jointly. The central question here, though, is whether CUI can be considered a joint venture vis-à-vis third parties, namely Broadband. The record firmly establishes that Broadband viewed CUI as a single entity.

A joint venture reflects an intent "that each participant shall stand in the relation of *principal as well as agent* as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the venture." *Flowers v. Pope*, 937 So.2d 61, 66 (Ala. 2006) (emphasis added). The record leaves no room for a genuine factual dispute. CUI constitutes a joint venture, and thus CU Contracting is an agent of CU Employment for purposes of indemnification under the MSA.

**Broadband's responsibility is a question of fact.**

Next, the parties dispute whether Helderle was a Broadband employee such that, under the MSA, Broadband could be liable to CU Employment (and thus CU Contracting) for his conduct. Plaintiffs contend that the record establishes that Helderle was a Broadband employee. Broadband contests that fact but asserts that, even if he was, Doe's claim did not arise out of Broadband's performance under the MSA.

*Helderle's employment*

The summary judgment record presents a genuine issue of fact as to whether Helderle was an employee of Broadband or CUI. Certain new-hire documents identify Helderle as a Broadband employee. These documents, along with Helderle's W-4 information, were submitted to Broadband's accountant, Joshua Harman, who confirmed in deposition that Helderle's information was entered into Broadband's payroll management system. Broadband and Harman also received Helderle's exit interview form after he was terminated. But other evidence in the record suggests that Helderle was employed by CUI. Consent forms authorizing Helderle's background check and drug test identify neither party but refer to "the Company" with which the applicant seeks employment; CUI actually conducted those procedures. Helderle was interviewed and hired by Robert Sebring, trained under Jeff Woerther on the Doe service call, and dismissed by Randy Ayers - all CUI personnel.[3] Helderle completed and signed a timesheet bearing the CUI logo the week before he attacked Doe. Multiple witnesses testified in deposition that CUI controlled operations and personnel, and that

---
[3] These individuals were employed by CU Employment.

Broadbands's role was indistinguishable and somewhat clandestine. Helderle stated, "Honestly, I don't know what the confusion is. I am very certain that I worked for CUI."

At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Plaintiffs' motion for summary judgment depends on finding as a matter of law that Helderle was a Broadband employee. This record does not permit such certitude. "Generally, the existence of an employment relationship is a question of fact for the fact-finder to decide." *South Alabama Skills Training Consortium v. Ford*, 997 So.2d 309, 327 (Ala. Civ. App. 2008). On this record, a reasonable jury could conclude that Helderle was an employee of CUI. Thus to the extent that Plaintiffs' arguments depend on Helderle being a Broadband employee, Plaintiffs are not entitled to summary judgment.

### *Broadband's obligation to indemnify under the MSA*

Defendants argue that, even if Helderle was a Broadband employee for a time, Plaintiffs still are not entitled to indemnification under the MSA because the claim did not arise in connection with Broadband's performance of work or ongoing operations; rather, Helderle was unemployed when he attacked Doe, and his motive was purely personal. The Court is not convinced that Helderle's employment is immaterial. The indemnification clause of the MSA states in pertinent part:

> In addition to any other indemnification obligations under this Agreement, Contractor shall indemnify and hold harmless, and at the Company's election defend, the Company and/or its predecessors, parents, agents, subsidiaries,

13

successors or assigns and its and each of their partners, officers, shareholders, directors, officers [sic], employees, and agents from and against: […]

(b) Any and all claims, judgments, liabilities, damages, expenses, fines, losses, demands, actions, lawsuits, executions and costs (including but not limited to attorneys' fees and court costs) arising out of or in connection with any of the following:

>   (i)   Performance of the Work by Contractor or its Sub-Contractor(s), or any agent, servant, employee or representative of Contractor or its Sub-Contractor;
>
>   (ii)  Any breach by Contractor or its Sub-Contractor(s) of the terms of the Documents;
>
>   (iii) Any breach by Contractor or its Sub-Contractor(s) of any warranty or representation in the Documents;
>
>   (iv)  The negligence or other wrongdoing on the part of any employee, agent, servant, or representative of Contractor or its Sub-Contractor(s); […]
>
>   (vi)  Any injury, damage or loss to persons … occurring during, arising from or arising in connection with: […]
>
>> (B) the entry upon or possession of Work site by Contractor or its Sub-Contractor(s);
>>
>> (C) the acts or omissions of Contractor, its Sub-Contractor(s) or the agents, employees, or invitees of Contractor or its Sub-Contractor(s) or any other person for whom Contractor or its Sub-Contractor(s) is responsible;
>
>   (vii) Any contractual indemnity obligation of the Company to any third party arising out of the injuries, damages and losses specified in [(b)(vi)]; […]
>
>   (ix)  Any claims by third parties for acts or omissions committed by Contractor or its Sub-Contractor(s) as an alleged agent of the Company, notwithstanding the agreement and understanding the [sic] neither Contractor nor its Sub-Contractor(s) is an agent or representative of the Company;
>
>   (x)   The conduct of Contractor's business; […].

As to what "arises out of work" for purposes of indemnification, Broadband cites *FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc.*, 914 So. 2d 344 (Ala. 2005). There, the trial court granted summary judgment for a subcontractor because the

14

time for performance had not yet arrived, so the contractor could not establish that liability arose out of the work. The Supreme Court of Alabama affirmed in deference to the trial court's assessment but noted that "different courts have accorded different treatment" to work-related indemnity clauses, particularly in terms of causal connection. *Id.* at 355. Thus *FabArc* offers little guidance here. Plaintiffs cite other authorities instructing that the phrase "arising out of" is broadly construed. "Arising out of … [is] ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from,' or, in short, 'incident to, or having connection with' … ." *State Farm Fire and Casualty Co. v. Erwin*, 393 So.2d. 996, 998 (Al. 1981) (citing *Blue Bird Body Company v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726 (5th Cir. 1951)). This precedent does not permit a finding, as a matter of law, that the Doe incident is not covered by the indemnification clause.

Additionally, Defendants assert that Broadband had no connection to Doe's claim because Helderle's criminal act was an intervening cause. In essence, Defendants argue that Doe could not have prevailed in her state court negligence action, so CUI alone should bear the cost of settling it. Broadband's own settlement with Doe undermines this argument. Moreover, Defendants were given notice and an opportunity to defend the action, so they cannot now contest the issue of liability in the underlying suit. When the indemnitor has notice of the claim and refuses to defend, the indemnitor is bound by any good faith reasonable settlement and the indemnitee need only show potential liability to the original plaintiff. *Stone Bldg. Co. v. Star Elec. Contractors, Inc.*, 796 So.2d 1076, 1090 (Ala. 2000).

Defendants also suggest that CUI's settlement related only to its own negligence and not that of Broadband. But Doe's petition alleges that Charter, CU Contracting, and Broadband were Helderle's joint employers who shared responsibility for hiring and firing him. Plaintiffs' settlement with Doe makes clear that it represented only partial satisfaction of Doe's damages and that both Doe and Plaintiffs reserved the right to seek recovery and indemnification from Defendants. Neither the petition nor the settlement reflects an allocation of fault separating Defendants from joint liability. To the extent that Defendants assert that the indemnification clause does not apply because Doe's claim arose solely from CUI's hiring and firing, this is a disputed fact for the jury to determine.

Although Defendants are not entitled to summary judgment as a matter of law based on the indemnification clause, neither are Plaintiffs. As previously discussed, a reasonable jury could find that Helderle was an employee of CUI. And though Plaintiffs argue that the MSA obligates Broadband to indemnify CUI even for CUI's own negligence, the MSA clearly states that neither party shall be responsible for any act or omission of the other or any employee of the other.

In sum, Broadband's liability for indemnification under the MSA (count I) and Mid-Continent's liability for coverage under Broadband's insurance policies (count II), hinge on disputed questions of fact. The present record precludes disposition on summary judgment.

**Count III**

Lastly, in count III of Plaintiffs' complaint, Travelers seeks equitable contribution from Mid-Continent for the Doe settlement and related expenditures based CU

16

Contracting's status as an additional insured under Broadband's general and excess liability policies issued by Mid-Continent.  Travelers contends that it is entitled to summary judgment on this count in that both insurers' policies cover the same insured (i.e., CU Contracting), the same interest, and the same risk.  Mid-Continent asserts that it is entitled to summary judgment on this count principally in that: (1) the MSA is not an "insured contract" in this case because CU Contracting was not a party and (2) Doe's claim did not arise from Broadband's "ongoing operations."  Again here, even accepting that the MSA applies to CU Contracting, both parties' arguments are premised upon the critical facts that remain in dispute, as previously discussed.  Resolution of those factual questions will dictate whether and how the Court examines the legal questions of insurance contract interpretation central to count III.

## CONCLUSION

Summary judgment will not lie when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248.  Given the broad language of the MSA indemnification clause and the disputed questions of fact regarding Helderle's employment and the extent to which Doe's claim arose from either or both parties' actions, the Court cannot conclude that either party is entitled to judgment as a matter of law.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the parties' respective motions for summary judgment are **DENIED**. ECF Nos. 102, 104, 106, 110.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of October, 2018.