**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

COMMUNICATIONS UNLIMITED
CONTRACTING SERVICES, INC., et
al.,
          Plaintiffs,

v.

BROADBAND INFRASTRUCTURE
CONNECTION, LLC, et al.,
          Defendants.

Case No. 4:16-cv-00516-AGF

**TO BE FILED UNDER SEAL,**
**(Pursuant to Amended Protective**
**Order, Doc. 92, ¶ 8)**

## MID-CONTINENT CASUALTY COMPANY'S RESPONSE IN OPPOSITION TO TRAVELERS' POST-TRIAL BRIEF

**I.**    **Travelers is Not Entitled to Equitable Garnishment Because Mid-Continent's Policies do Not Cover the Same Risk with Respect to Jane Doe's Injuries.**

    **A. Coverage under MCC's additional insured endorsement does not apply to the same risk that Travelers covered with respect to the injuries alleged by Jane Doe.**

To have a claim for equitable contribution, the insurance issued by both insurers "must cover the same insured, the same interest, and the same risk." *Heartland Payment Sys., LLC v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. App. E.D. 2006). Even assuming *arguendo* that Travelers can meet the first two elements for equitable contribution, it has not met the third element. Mid-Continent's coverage for an additional insured does not cover the same risk as Travelers' policies did with respect to the injuries alleged by Jane Doe.

The additional insured endorsement in MCC's primary policy only applies to liability "caused, in whole or in part, by [Broadband's] performance of ongoing operations for [CUI]."[1] Broadband's "work" under the MSA was to provide labor, tools and equipment for installation and servicing of cable and related equipment for television, broadband and telephone services.

---

[1] Trial Exhibit 25.

1

Helderle had been fired and was in not acting in the scope of employment for Broadband when he assaulted Jane Doe.  Even if he had been hired as a trainee technician for Broadband, his assault did not involve liability caused by Broadband's "ongoing operations" under the MSA.

Travelers mistakenly argues that MCC only is seeking to apply a "temporal" limit to the interpretation of the term "ongoing operations" in the additional insured endorsement. The question is not merely a function of when Helderle assaulted Doe but whether her injuries were in some way caused by Broadband's cable installation services under the MSA. Determining whether coverage will apply under an additional insured endorsement requires evaluation of whether a claim involved the named insured's "work" or "operations."

In *National Union Fire Ins. Co. v. City of St. Louis*, 947 S.W.2d 505 (Mo. App. E.D. 1997), the named insured was a contractor that provided baggage-handling services for Lambert Airport, including curb-side service for departing passengers.  An automobile drove up on the sidewalk where the contractor provided baggage-handling services, and the vehicle injured both an employee of the contractor and a customer.  *Id*. at 506.  The injured parties sued the City of St. Louis (owner of the airport) for negligence in design of the area and failing to construct a guardrail.  The city was an additional insured under the baggage-handling company's policy, but "solely with respect to the operations of [the baggage handler]."  *Id*. at 507.  The court found the term "operations" involved "'[the] performance of a practical work or of something involving the practical application of principles or processes.'"  *Id*. *citing* Webster's New Collegiate Dictionary.  The court found that being struck by a car did not involve the baggage-handler's "operations," so coverage for the city as an additional insured did not apply.  *Id*.

In *Stevens Painting Corp. v. First State Ins. Co.*, 746 A.2d 649 (Penn. 2000), a contractor's employee slipped and fell on a roadway at the work site while he was on the way to

2

a bank for some personal business.  He sued the owner of the facility for his injuries, and the owner argued it was an additional insured under the contractor's policy.  *Id*. at 651-52.  The court found that the owner was responsible for maintaining the roadway, not the contractor.  Although the owner was an additional insured under the contractor's policy, the court found that coverage did not apply because the injury did not arise out of the contractor's "operations" under the contract.  *Id*. at 656-58.

In *Markel International Ins. Co. v. Centex Homes, LLC,* 2006 WL 278920 (D.N.J. Feb. 2, 2006), the court held that coverage under additional insured endorsement did not apply to an accident that occurred while the named insured's employee was driving home at end of day. Similarly, in *Time Warner Entertainment Co., L.P. v. Travelers Cas. & Sur. Co.*, 1998 WL 800319 (E.D. Penn. Nov. 10, 1998), the court found that an additional insured endorsement did not provide coverage where an employee was injured after leaving worksite to get a hardhat after supervisor told him he could not work without one.

In each of those cases, the accident occurred while the named insured was working for the additional insured, and the injuries were sustained at or near the location where the named insured performed the work. Yet, the courts found that coverage under an additional insured endorsement did not apply because the injuries did not arise out of the operations for which the named insured had been hired.

Travelers cites several cases to argue that coverage for "ongoing operations" refers to the type of activity from which the additional insured's liability must arise, not when the injury or damage must occur.  That case law is distinguishable, however, because the claims involved in those decisions arose out of work for which the named insured had been hired.

*Tri-Star Them Builders, Inc. v. OneBeacon Ins. Co.* 426 F. Appx. 506 (9th Cir. 2011) involved a claim for defective workmanship for a resort and casino project.  The claim included allegations of defective work on the HVAC systems, which was the work for which the named insured had been hired.  *Id.* at 508.  Therefore, the liability arose out of the named insured's work for that project.

In *Wausau Und. Ins. Co. v. Cincinnati Ins. Co.*, 198 F. Appx. 148 (2d Cir. 2006), a mall patron sued the mall operator for personal injuries sustained when the patron slipped on ice in the mall's parking lot.  The mall operator had hired the named insured to plow and salt the parking lot, so court found the claim arose out of the named insured's "ongoing operations" to clear the lot.  *Id.* at 149-50.  Therefore, the claim came within coverage for the mall operator as an additional insured under the contractor's policy.  *Id.*

In *Marathon Ashland Pipe Line, LLC v. Maryland Cas. Co.*, 243 F.3d 1232 (10th Cir. 2001), a company that operated an energy pipeline hired a contractor to provide services related to the pipeline, and the pipeline operator was endorsed as an additional insured under the contractor's policy.  The lawsuit involved a personal injury claim where a temporary employee for the contractor was injured while mowing along the pipeline.  *Id.* at 1235.  The court found the work the temporary employee was performing at the time of the accident was part of the contractor's "ongoing operations" for the pipeline company.

In *Commerce Bancshares, Inc. v. American Family Mut. Ins. Co.*, 2016 WL 1161595 (E.D. Mo. Mar. 23, 2016), the named insured was hired to provide landscaping and tree pruning services for a bank, and the bank was an additional insured under the contractor's policy.  2016 WL 1161595 *2.  The bank was sued in a personal injury claim where the plaintiff alleged a tree on its property had not been properly trimmed near a highway so that it blocked the view of

oncoming traffic, resulting in a motorcycle accident.  The court found that the claim involved the landscaper's responsibilities in pruning trees, which involved its "ongoing operations" for the bank.  *Id.* at *4.

*Amerisure Mut. Ins. Co. v. Federal Ins. Co.,* 2016 WL 1721124 (E.D. Mo. App. 29, 2016) involved a personal injury lawsuit in which a man was injured when a package exploded in a parking garage.  The injured party sued several parties, including the owner of the building where the parking garage was located and a company that was hired to manage and operate the parking garage.  Amerisure issued a policy to the company that managed the garage, and the policy provided additional insured coverage for the company's "ongoing operations."  The court found that Amerisure had a duty to defend the owner because the underlying lawsuit included allegations that involved duties of the named insured in managing the parking garage.  *Id.* at *8.

In each of the cases cited by Travelers, the injuries arose out of activity that was part of the named insured's work.  In this case, even though the jury found Helderle was an employee of Broadband or both CUI and Broadband, his assault on Jane Doe was an intentional criminal act after his employment had been terminated.  His assault did not arise out of Broadband's "ongoing operations" for cable installation services under the MSA.  Jane Doe's injuries arose from a criminal assault that was independent of Broadband's work for CUI.  Therefore, this case comes within the purview of *National Union*, *Stevens Painting* and *Markel International*, discussed above.  The claims alleged against CUI in the Underlying Lawsuit did not involve liability that was caused, in whole or in part, by Broadband's "ongoing operations" for CUI.

Travelers' reliance on *Peterson v. Discover Prop. & Cas. Ins. Co.*, 460 S.W.3d 393 (Mo. App. W.D. 2015) also is misplaced. The Missouri Highway & Transportation Commission ("MHTC") hired Progressive Contractors, Inc. ("PCI") to make bridge repairs, which included

cutting a hole in the bridge.  *Id*. at 397.  The underlying lawsuit involved an accident where the injured parties drove a car into the hole in the bridge and sustained serious injuries.  *Id*. at 398. Discover Property & Casualty issued a general liability policy to PCI, and MHTC claimed it was an additional insured under that policy.  *Id*. at 399. The plaintiffs in the underlying lawsuit entered into a settlement with MHTC, in which they agreed that they would only seek recovery for the settlement from Discover.  *Id.*  The plaintiffs proceeded to trial in the underlying lawsuit against PCI and another contractor that had provided traffic control services, and a jury returned a defense verdict in favor of both PCI and the other defendant.  *Id.* at 400.

In the equitable garnishment action against Discover, the insurer argued that the additional insured endorsement only provided coverage for vicarious liability for negligence by PCI or its subcontractor, and that coverage did not apply to MHTC's own negligence.  *Id.* at 404. The court of appeals applied a "but for" analysis to the term "caused by" and found that MHTC was insured for its own negligence under the additional insured endorsement.  *Id.* at 405-07.

In *Peterson*, however, the hazard in the underlying lawsuit – a hole cut in a bridge – involved the work for which the MHTC had hired PCI under the contract.  *Peterson* is distinguishable on the same basis as the other cases that Travelers relies on to argue that Doe's claims came within Broadband's "ongoing operations." Even if CUI qualified as an additional insured under MCC's policies, the liability that CUI and Travelers settled must have been the result of some part of Broadband's work for cable installation for coverage to apply.

Moreover, the "but for" analysis applied by the court in *Peterson* still requires a causal connection between Broadband's work and Jane Doe's injuries.  Helderle's criminal assault on Doe after-hours and after he had been terminated from employment was too remote to come within that test.  This case comes within the decision in *National Union*, *Stevens Painting* and

6

other case law referenced above where the courts found the claims did not arise out of the named insured's work, so that coverage did not apply for the additional insured.

As a matter of law, coverage under MCC's additional insured endorsement does not apply to the sums that CUI and Travelers seek to recover in this action.

**B.**   **Travelers is Not Entitled to Recover for its Payment to Defend and Settle the Claims against Charter Communications, Inc.**

Travelers is not entitled to contribution for its payments to defend and settle Jane Doe's claims against Charter Communications, Inc.   Travelers concedes that Charter was not an additional insured under MCC's policies, so the only potential basis for recovery for Travelers to recover the expense to defend and indemnify Charter would be if those payments came within MCC's coverage for CUI as an additional insured.

Travelers acknowledges that MCC's policies include the "contractual liability" exclusion, which excludes "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."   That exclusion does not apply to an "insured contract," and Travelers argues that the coverage for an "insured contract" will apply to CUI's obligation to defend and indemnify Charter under the Master Contractor Agreement.   However, coverage for an "insured contract" is limited to an agreement where Broadband – the named insured – agreed to indemnify another party.

MCC's Primary Policy includes an endorsement captioned "Amendment of Insured Contract Definition," which provides the following amended definition for "insured contract":

> Paragraph 9. of the Definitions Section is replaced by the following:
>
> 9.    "Insured contract" means:
>
>> f.    That part of any other contract or agreement pertaining to your business … **under which you**

7

> **assume the tort liability of another party** to pay
> for "bodily injury" or "property damage" to a third
> person or organization, provided the "bodily injury"
> or "property damage" is caused, in whole or in part,
> by you or by those acting on your behalf.   Tort
> liability means a liability that would be imposed by
> law in the absence of any contract or agreement.
> (emphasis added)[2]

The definition of "insured contract" applies to an indemnity agreement where "**you** assume the

tort liability of another party."  Both MCC's Primary Policy and Excess Policy expressly define

the words "you" and "your" as referring to 'the Named Insured shown in the Declarations.'"[3]

**The definition of "insured contract" is limited to an agreement where the named insured**

**assumes the tort liability of another party, so MCC's coverage for an "insured contract" is**

**limited to liability assumed by the named insured.**

Broadband is the named insured in MCC's policies, not CUI; so MCC's coverage for an

"insured contract" is limited to agreements where Broadband agreed to indemnify another party.

Broadband was not a party to the Master Contractor agreement between CUI and Charter, and

any liability that CUI assumed to defend or indemnify Charter under that agreement does not

come within MCC's coverage for an "insured contract."  Thus, Travelers cannot meet the

elements for equitable contribution for its payment to defend and indemnify Charter in the

Underlying Lawsuit.  Charter was not a common insured under Travelers' and MCC's policies,

and the cost to defend and indemnify Charter did not involve the same risk covered by both

Travelers and MCC.  MCC did not cover CUI's liability to defend and indemnify Charter under

the Master Contractor Agreement.

In addition, an "insured contract" involves the named insured's assumption of another

party's **tort liability**, not assumption of another party's **contractual obligation** to someone else.

---

[2] Trial Exhibit 25.
[3] Trial Exhibits 25 & 26.

8

The MSA would be an "insured contract" only to the extent Broadband assumed the tort liability of CUI to Jane Doe.  Any provision that required Broadband to indemnify CUI for CUI's separate obligation to indemnify Charter under the Master Contractor Agreement involves Broadband's **assumption of CUI's contractual obligations to Charter**.  It is not the assumption of another party's tort liability and does not come within the definition of "insured contract."  Therefore, CUI's agreement to defend and indemnify Charter involved the "assumption of liability in a contract or agreement," which comes within the "contractual liability" exclusion in both of MCC's policies.

CUI and Travelers have failed to show the payments made to defend and indemnify Charter against Jane Doe's claims come within MCC's coverage for an "insured contract."  As a matter of law, Travelers is not entitled to equitable contribution for its payments to defend and indemnify Charter in the Underlying Lawsuit.

## II.   Even if Mid-Continent's Coverage did Apply, Priority of Coverage Between Mid-Continent's and Travelers' Policies is Determined by the Policies' Terms, not by the MSA.

Travelers argues that the indemnification agreement in the MSA is enforceable.  Citing *Federal Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160 (Mo. App. E.D. 2005) and *Wal-Mart Stores, Inc. v. RLI Ins. Co.*, 292 F.3d 583 (8th Cir. 2002), Travelers also argues that they may shift the entire liability to MCC's policies, so that MCC's coverage will be primary to Travelers' policies, regardless of whether the policies' terms would call for a different result.  In both *Federal* and *Wal-Mart*, the courts based their rulings on priority of coverage on the fact that the named insureds had entered into enforceable indemnity agreements with the parties seeking coverage as additional insured.  The courts found the terms of the indemnity agreements revealed the parties' intent on priority of coverage.  *Federal*, 162 S.W.3d at 164-66; *Wal-Mart¸* 292 F.3d at 587-88.

9

In this case, CUI asserted a claim for indemnity against Broadband in Count I of the Complaint. By stipulation of the parties, however, CUI's claim for indemnity was dismissed with prejudice (Doc. #201)[4]. Moreover, in Counts II and III, both CUI and Travelers only based their claims against MCC on the MSA's requirement that Broadband make CUI an additional insured under Broadband's policies. (Complaint, Doc. #1, ¶¶ 61-65, 71-74 & 76.) Neither CUI nor Travelers based their claims against MCC in Counts II or III on the indemnity provision in the MSA. Whether Broadband was liable to indemnify CUI no longer is at issue in this action. Therefore, whether the indemnity agreement between CUI and Broadband would have been enforceable is not relevant to the claims for coverage against MCC, and the decisions in *Federal* and *Wal-Mart* are not on point.

True excess and umbrella policies require underlying primary policies as a condition of coverage. *Planet Ins. Co. v. Ertz*, 920 S.W.2d 591, 593 (Mo. App. W.D. 1996); 15 *Couch on Insurance*, § 220:3 (3d ed. 2018). A primary policy that contains an "other insurance" clause is purchased to provide the "first tier" of coverage, but it may be excess to other coverage under certain circumstances. *Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1173 (8th Cir. 2011). In contrast, an umbrella or "true excess" policy is written to be the "final tier" of coverage and will apply only after all available primary coverage has been exhausted. *Id.*; *Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477, 484 (Mo. App. E.D. 1998); 15 *Couch on Insurance*, § 220:3, *supra*; 14 *Couch on Insurance*, § 200:39 (3d ed. 2018).

MCC's Excess Policy is a "true excess" policy that was expressly written to be excess to underlying primary coverage. The policy's declarations include a Schedule of Underlying Insurance that lists MCC's Primary Policy and other policies as providing primary coverage

---

[4] The Stipulation of Dismissal included an agreement that dismissal of Count I would not preclude plaintiffs from continuing to pursue their claims against MCC and that plaintiffs still could seek to recover the full amount claimed by both CUI and Travelers.

beneath its excess coverage.  The insuring agreement and other terms of MCC's Excess Policy expressly state that its coverage will apply only after any available primary coverage is exhausted.  Further, MCC's Excess Policy includes an "other insurance" clause that expressly states that its coverage is excess to any other insurance, "whether primary, excess, contingent or on any other basis."  Those terms are typical of a "true excess" or umbrella policy.[5]

Courts generally do not allow a right to contribution by a primary insurer against an excess carrier.  15 *Couch on Insurance*, § 218:7 (3d ed. 2018); 2 A. Windt, *Insurance Claims & Disputes*, § 10:4 (6th ed. 2018).  "[I]t is axiomatic that equitable contribution does not apply to primary/excess insurance issues."  *Argonaut Ins. Co. v. Safway Steel Products, Inc.*, 355 Ill. App. 3d 1, 822 N.E.2d 79, 87 (2004).  One of the elements for equitable contribution is that both insurers cover the same risk.  "By their very definitions, primary and excess policies cover different risks."  *Argonaut*, 822 N.E.2d at 87.

Travelers' Primary Policy is "first tier" coverage, while MCC's Excess Policy is a "true excess" policy that will apply only after all other available coverage has been exhausted.  The two policies do not cover the same risk.  Even if the Court were to find that MCC's policies could apply here, Travelers is not entitled to contribution under MCC's Excess Policy without showing that all other "first tier" coverage, including Travelers' Primary Policy, has been exhausted.

MCC has discussed in greater detail the reasons why its excess policy is excess to Travelers' coverage in MCC's Memorandum in Support of its Supplemental Motion for Summary Judgment.  MCC incorporates that argument and authority by reference rather than reiterate it in detail here.

---

[5] Trial Exhibit 26.

11

III.   **Plaintiffs are not entitled to Prejudgment Interest Because They Never Have Allocated the Amount Paid to Settle the Claims Against CUI versus Charter, or Alternatively, are not Entitled to Interest Before the Date They Disclosed the Amount Paid.**

Travelers and CUI have asked for prejudgment interest under R.S. Mo. § 408.020, with interest to accrue as of April 13, 2016, the date they filed their Complaint. "Prejudgment interest may only be awarded where the claim is liquidated, which means the claimed amount is 'fixed and determined or readily ascertainable by computation or a recognized standard.'" *Travelers Comm. Cas. Co. v. Vac-It-All Services, Inc.*, 451 S.W.3d 301, 313 (Mo App. E.D. 2014). Prejudgment interest is not recoverable where a person does not know the amount claimed, and that person should not be considered to be in default due to refusal to pay. *Id. citing Watters v. Travel Guard Internat.*, 136 S.W.3d 100, 111 (Mo. App. E.D. 2004).

In addition, a party seeking prejudgment interest needs to show not merely when it filed the complaint but when it obtained service on the defendant. *Travelers Prop. & Cas. Ins. Co. of Am. v. National Union Ins. Co.*, 735 F.3d 993, 1007 n. 6 (8th Cir. 2013).  In other words, Travelers and CUI have the burden to establish when MCC knew the amount they were claiming or had information that would have enabled MCC to calculate the amount claimed.  Prejudgment interest cannot be recovered, prior to the date the amount they were seeking became known or readily ascertainable.

To this day, Travelers and CUI have never provided any information to indicate what portion of the amount they paid to Jane Doe was to settle her claims against CUI as opposed to the amount paid to settle her claims against Charter.  MCC is not liable for the amount paid to defend and indemnify Charter in the Underlying Lawsuit.  As a result, the amount paid to settle Doe's claims against CUI has not been disclosed and has never been readily ascertainable by computation.  Plaintiffs' failure to allocate the amount they paid to settle the claims against CUI,

12

as opposed to their settlement of the claims against Charter nullifies their right to recover prejudgment interest on any portion of their claim.

Even if Plaintiffs could recover prejudgment interest on a portion of the amount they are claiming, they did not disclose the amount paid under their settlement with Jane Doe until June 29, 2017.  If Plaintiffs would be entitled to prejudgment interest on any portion of their claim, it would not begin to run before June 29, 2017 at the earliest.

**A. Plaintiffs' Failure to Allocate the Amount Paid to Settle the Claims Against CUI from Settlement of the Claims Against Charter Nullifies their Claim for Prejudgment Interest, Because the Amount Potentially Covered under Mid-Continent's Policies was not Readily Ascertainable.**

As discussed above, even if the Court found that Travelers and CUI would be entitled to recover for their payment to defend and settle Doe's claims against CUI, the amount they paid to defend and settle the claims against Charter was not covered under MCC's polices.  Travelers and CUI have never indicated what portion of their payment to Jane Doe was to settle her claims against CUI as opposed to her claims against Charter.  Nothing in their complaint, documents produced or responses to discovery provided a means for MCC to ascertain what portion of their payment to Jane Doe was to settle her claims against CUI as opposed to payment to settle CUI's obligation to indemnify Charter under the Master Contractor Agreement. No such information was raised in Travelers' or CUI's motions for summary judgment or in their trial briefs or post-trial briefs.

Travelers and CUI have the burden to show when MCC knew the amount they were claiming under MCC's policies, or when the amount was readily ascertainable by computation. At no point – even in their post-trial briefing – have Travelers and CUI indicated how much of the amount they paid to Jane Doe was allocated to settle her claims against CUI versus her claims against Charter.  To this day, MCC has not received any information that would have

13

enabled it to determine what portion of their settlement with Doe applied to her claims against CUI.

Travelers' and CUI's failure to allocate the amount they paid to settle the claims against CUI from the claims against Charter nullifies their request for prejudgment interest.  The amount they are claiming to settle Doe's claims against CUI has never been disclosed and could not be readily computed from the information they produced.   Therefore, MCC should not be considered to be in default for the purposes of their claim for prejudgment interest.  *Vac-It-All Services, Inc.*, 451 S.W.3d at 313.  Travelers and CUI are not entitled to prejudgment interest on any portion of the amount they are claiming.

**B. Prejudgment Interest Would Not Begin to run from the Date the Complaint was filed Because Travelers and CUI did not Disclose the Amount of their Settlement with Jane Doe Until June 29, 2017.**

The amount claimed by Travelers and CUI was not readily ascertainable when they filed their complaint.  The Complaint filed by CUI and Travelers only indicates that they entered into a confidential settlement with Jane Doe, and it does not indicate the amount paid to her.  (Doc. #1, ¶ 43.)  The initial Case Management Order for this case was issued by Judge Hamilton on January 24, 2017, setting discovery deadlines (Doc. #31.)  Travelers and CUI served their Rule 26(a)(1) initial disclosures on January 17, 2017 and January 23, 2017 respectively, and their disclosures only stated they sought to recover the amount paid under the confidential settlement in addition to attorney's fees and expenses incurred in the Underlying Lawsuit.  Their disclosures did not indicate the amount sought.  (Travelers' Initial Disclosures, Exhibit 1; CUI's Initial Disclosures, Exhibit 2.)

Interrogatories and document requests served on CUI included requests for the amount paid to Jane Doe under the settlement, and for a copy of the settlement agreement.  In its

responses to that discovery served on March 24, 2017, CUI objected to providing that information on the basis that it was "deemed confidential by the Plaintiff." (CUCS' Answers to Interrogatories No. 9, Exhibit 3; CUI's Responses to First Request for Documents No. 16, Exhibit 4.)  It was not until June 29, 2017, after the Court had entered a protective order, that Plaintiffs produced a copy of their settlement agreement with Jane Doe in response to MCC's discovery concerning the amount paid.  (CUI's Supplemental Answers to Interrogatories and Supplemental Responses to Document Requests, Exhibits 5 and 6.)

Before Travelers and CUI may recover prejudgment interest, they must show when MCC was informed of the amount they were claiming.  Prejudgment interest does not begin to accrue under Missouri law before the liable party knows the amount the plaintiff is claiming, or the amount can be readily computed.  If Travelers and CUI would recover prejudgment interest on any portion of their claim, the interest should not begin to accrue before June 29, 2017 at the earliest, since the amount of their settlement with Doe was not disclosed until then.

MCC denies is it liable for prejudgment interest on any portion that Plaintiffs are claiming.  If the Court should find they are entitled prejudgment interest, however, it should be limited to the amount the Court finds to be within MCC's coverage, and the interest should not begin to run before June 29, 2017 at the earliest.

WHEREFORE, Defendant Mid-Continent Casualty Company respectfully requests this Court to enter judgment as a matter of law as follows:

a. Finding that the insurance policies that Mid-Continent issued to Broadband Infrastructure Connection, LLC do not provide coverage for the any of the claims for which Travelers and CUI seek recovery in this action;

15

b. Alternatively, if the Court finds that MCC's coverage will apply to Jane Doe's claims against CUI, finding that Plaintiffs are not entitled to recover for payments made to defend or indemnify Charter Communications, Inc. and further finding that MCC's Excess Policy is excess to Travelers' coverage;

c. Finding that Mid-Continent is not liable for prejudgment interest for any portion of the amount sought by Plaintiffs;

d. Alternatively, finding that Plaintiffs only would be entitled to prejudgment interest for the portion of their claim that comes within Mid-Continent's coverage and that interest would not begin to accrue before June 29, 2017 at the earliest; and

e. Ordering all other relief the Court deems just and equitable.

Respectfully submitted,

**SANDERS WARREN RUSSELL & SCHEER LLP**

*/s/ Curtis O. Roggow*

| | |
|---|---|
| Curtis O. Roggow | Bar No. 42995 |
| Tracy M. Hayes | Bar No. 58555 |

9401 Indian Creek Parkway, Ste. 1250
Overland Park, Kansas 66210
P:  (913) 234-6100
F:  (913) 234-6199
c.roggow@swrsllp.com
t.hayes@swrsllp.com
**ATTORNEYS FOR MID-CONTINENT
CASUALTY COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 4, 2019, the above and foregoing was filed **UNDER SEAL** via the court's electronic filing system and served via email to all counsel of record, including:

Michael D. Cerulo
Erica Leigh Briscoe
BATY, HOLM, NUMRICH & OTTO P.C.
7711 Bonhomme Ave., Suite 901
St. Louis, MO  63105
P: (314) 863-6274
F: (314) 863-6407
mcerulo@batyholm.com
ebriscoe@batyholm.com
**ATTORNEYS FOR PLAINTIFFS**

Tyson H. Ketchum
Jonathan Shulan
ARMSTRONG TEASDALE, LLP
2345 Grand Blvd., Ste. 1500
Kansas City, MO  64108
P: (816) 221-3420
F: (816) 221-0786
tketchum@armstrongteasdale.com
jshulan@armstrongteasdale.com
**ATTORNEYS FOR CHARTER OAK & ST. PAUL**

John E. Franke
Heather Hatley
FRANKE SCHULTZ & MULLEN, P.C.
8900 Ward Parkway
Kansas City, MO 64114
P: (816) 421-7100
F: (816) 421-7915
jfranke@fsmlawfirm.com
hmarengo@fsmlawfirm.com
**ATTORNEYS FOR MID-CONTINENT**

/s/ Curtis O. Roggow
Attorney

17